IN THE UNITED STATE DISTRICT COURT

FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

JAN 1 8 2011

Stephan Harris, Clerk
Cheyenne

RAYMOND NORCUTT, JR

    PETITIONER,

V.                                    CASE NO. 07-CR-90WFD

UNITED STATES OF AMERICA, INC.,

    RESPONDENT,

_____/

NOW COME the above captioned petitioner, hereinafter, petitioner/defendant, and respectfully moves this court as a matter of equity, justice and law for relief.

As a matter of law, promulgated in several decisions starting with STANTOBELLO V NEW YORK, 404 US 257, 92 S.Ct. 495, 30 L.Ed 427 (1971), PEAVY V UNITED STATES, 31 F3d 1341, 1346 (6th Cir. 1994), UNITED STATES V. SCHILLING, 142 F3d 388, 394 (7th Cir. 1998), UNITED STATES V BARRON, 173F3d 1153, 1158 (9th Cir. 1999) and UNITED STATES V SANDOVAL-LOPEZ, 122 F3d 797 (9th Cir. 1997) the courts interprets plea agreements against contract law. As such the petitioner would direct the court attention to the following arguments regarding this plea agreement.

The petitioner would remind the court that he is pro se and as such is not learned in law or the nicety of court rules and procedures. Further, the court is not bound by asserted title or style, of a motion but to it's content validity. See SMITH V UNITED STATES, 721 F2d 346, 348 (11th Cir. 1983). So then the petitioner will present these arguments to construct the events and convey to the court the events surrounding this plea.

## JURISDICTION

The petitioner files this petition pro se and hereby placing this court on notice that accordingly, the court liberally construe this petition. Equity should motivate this court to apply the appropriate rule if jurisdiction is misquoted below.

Petitioner invokes this court jurisdiction under:

Rule 60(b) Savings Clause

/s/

QUESTION PRESENTED

ARGUMENTS:

INEFFECTIVE ASSISTANCE OF COUNSEL

1-2

DOES THE COURT'S ADMONISHMENT, MANDATED UNDER RULE 11, AFFORD THE DEFENDANT A FAIR REPRESENTATION OF HIS OPPORTUNITY O WITHDRAW THE PLEA; AND DOES EFFECTIVE ASSISTANCE OF COUNSEL ATTACH?

3-8

DID THE COURT PURSUANT TO THE PLEA AGREEMENT, AND AGAINST CONTRACT LAW AND PRINCIPALS, ABUSE IT'S DISCRETION WHEN IT ACCEPTED THE CONTRACT PLEA VOID IN CONSIDERATION? AND DOES THE COURT HAVE JURISDICTION?

9-12

IS THERE MUTUAL ACCENT TO TERMS BY DEFENDANT AND THE UNITED STATES OF AMERICA?

13-16

DOES DUE PROCESS SURVIVE ADHESION PLEA AGREEMENT WITH UNCONSCIONABLE TERMS?

17-24

FRAUD ON THE COURT

25-29

DOES THE OPERATION OF THE "PLEA PROCESS," RENDER THE COURT'S DISCRETION IN ACCEPTING THE PLEA AGREEMENT, VIOLATE PUBLIC POLICY, CONTRACT PRINCIPLES AND LAWS? THE PETITIONER MOVES TO RESCIND THE PLEA AGREEMENT AS VOID IN LAW AND THEREFORE THE COURT HAD NO JURISDICTION.

30-37

PRAYER FOR RELIEF

38

INEFFECTIVE ASSISTANCE OF COUNSEL

To obtain reversal of a conviction, the defendant must prove; 1) that counsel's performance fell below an objective standard of reasonableness. In STRICKLAND V WASHINGTON, 466 US 668, 669 (1998) the court stated that "the purpose of the effective assistance guarantee of the Sixth Amendment is ... to ensure that criminal defendants receive a fair trial." id at 689 states that a court must:

judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgement. The court must then determine whether, in light of all the circumstance, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgement. id at 690.

Counsel, regarding the plea, defendant deciding to opt for plea, does not negotiates any part of the four corners of the plea document. Counsel simply failed to safe guard the petitioner and misrepresenting the process operates to deny the defendant fair representation of the process. The question whether counsel was deficient is more difficult where, as here the client has been informed of the plea, yet the true nature is lacking and will be reflected in the following arguments.

A defendant has the right to make a reasonably informed decision whether to accept a plea offer." UNITED STATES V DAY, 969 F. 2d 39, 43 (3d Cir. 1992)(citing LOCKHART, 474 US at 56-57, 106 S.Ct. 366 (holding that voluntariness of guilty plea depends on the adequacy of counsel's legal advice)). In MCMANN V RICHARDSON, the seminal decision on ineffectiveness of counsel in plea situations, the Court described the question as not whether "counsel's advice (was) right or wrong, but . . . whether that advice was

1

within the range of competence demanded of attorney's in criminal cases." id
397 US at 771, 90 S.Ct. 1441. Throughout the next few arguments ineffective
assistance of counsel arguments will be presented in the context of the
questions presented.

THE LAWYER'S ROLE AND ETHICAL OBLIGATION IN CONTRACT DRAFTING

The AMERICAN BAR ASSOCIATION (ABA) Model Rules of Professional Conduct
is clear on the ethics of lawyer and their role in contract drafting, "a
shall not counsel a client to engage, assist a client, in conduct that the
lawyer knows is criminal or fraudulent." Model Rule 1.2(d). The Government
drafts a plea agreements that lacks real elements of contract, camofiflaged in
the prolix of terms never seen before by the defendant and counsel's failure
to give true nature of the terms, both words and performance. Clearly,
drafting a clearly unenforceable and detrimental waiver would be tantamount to
fraud by the Government and endorsed by defense counsel who often becomes
unreachable to the defendant after the sentencing and the petitioner gets to a
law library and finds out     what happen (some petitioners). Model Rule
1.16(a)(1) states, "a lawyer must withdraw if "representation will result in
violation of rules of professional conduct or other law," further see
generally Lee A. Pizzimental, **Prohibiting Lawyers from Assisting in
Unconscionable Transactions: Using an Overt Tool 72 Marq. L. Rev. 151 (1989).**
The arguments presented will describe to the court the several problems that
have served to deny the petitioner effective assistance of counsel regarding
the plea and the problems surrounding the plea process.

The government further breaches the plea where the government stated
that they would   stand   silent   it's   position   of   downward   departure,
irrespective of the government's projection of where the defendant ended up
on the guidelines. The government's does not get to change the plea because
it's projection was wrong and therefore it is a material breach.

2

DOES THE COURT'S ADMONISHMENT, MANDATED UNDER RULE 11, AFFORD THE DEFENDANT A FAIR REPRESENTATION OF HIS OPPORTUNITY TO WITHDRAW THE PLEA; AND DOES EFFECTIVE ASSISTANCE OF COUNSEL ATTACH?

The Government, inevitably assesses a petition as not meeting the stringent test under STRICKLAND V. WASHINGTON, 466 US 668, 687 (1984), to show that defendant received ineffective assistance of counsel. However, nothing is further from the truth. Furthermore, the Government states that the application of the USSG does not give rise to a constitutional issue and is outside the parameters of a 28 USC § 2255 claim. Again, the Government is misapplying the components of the arguments as put forth. It is exactly the issue of counsel's understanding of the issue, rule, guideline, case law or law itself that counsel must know and then apply regarding the process of the plea.

"In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof." STRICKLAND, 466 US at 687. "The proper standard for judging attorney performance is that the reasonably effective assistance, considering all the circumstances." id. "[T]he Sixth Amendment requires counsel to conduct a reasonably thorough, independent inquiry into the defenses that might be offered for trial, plea (emphasis added) or in mitigation of punishment." LADD V COCKRELL, 311 F.3d 394, 358 (5th Cir. 2002)(citing BALDWIN V MAGGIO, 704 F2d 1325, 1332-33 (5th Cir.), cert. denied, 467 US 1220(1984)).

The Government fails to address the issue of the petitioner seeking to go to trial, and the fact that he has no real concept of **contract law and principle** allows the government and counsel to achieve a level of coercion that is profound. Counsel gave the petitioner erroneous advice as to the potential sentence, if, he was found guilty by trial. This, in fact, is the issue. "Counsel's complete ignorance of relevant law (or guidelines) and wrong advise to defendant about potential prison sentence fell below

3

objective, not subjective, standards of complete competence demanded of counsel." MAGANA V HOFBAUER, 263 F3d 542, 549-50 (6th Cir. 2001) When Counsel's advice to defendant is "void from factually correct information" the defendant needs to make an informed choice, his decision to plead in light of not being aware of the rules, guidelines and laws that are the daily practice of this court, surely renders counsel ineffective. Defendant must rely totally on the advice of counsel and his knowledge of these different areas of law. His lack of knowledge leaves defendant totally defenseless in regard to effective information to make informed decision for trial or for a plea.

Due process as to the procedures and rules that apply to the court is an essential element as it relates to counsel's ability to affectuate the objective of the petitioner. This circuit has articulated the reasonably effective assistance of counsel standard for the guilty plea context:

"It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly. He must actually and substantially assist in deciding whether to plead guilty. It is his job to provide the accused an "understanding of the law in relation to the facts. The advice he gives need not be perfect, but it must be reasonably competent." His advice should permit the accused to make an informed (counsel and US Attorney is well aware of plea "course of conduct") and conscious choice. In other words, if the quality of counsel's service falls below a certain minimum level, the client's guilty plea can not be knowing, voluntary and the element of mutual assent as mandated under contract elements, because it will not represent an informed choice."

A lawyer who is not familiar with the facts and law relevant to his client's case cannot meet the requirement minimal level and therefore the defendant without such assistance can not have known, be of voluntary state and have a mutual (assent) understanding." HERRING V ESTELLE, 491 F2d 125, 128 (5th Cir. 1974) See TRAHAN V ESTELLE, 544 F2d 1305, 1309 (5th Cir. 1977) "a guilty plea lacks the required voluntariness and understanding if entered on advise of counsel that fails to meet the

4

minimum standards of effectiveness derived from the sixth and fourteenth amendments." See also UNITED STATES V RUMERY, 698 F2d 764 (5th Cir. 1983) "advising that defendant could receive more than he actually could, makes plea involuntary".

When Counsel purports to give advice on whether a criminal defendant should or should not plead guilty, that advise should not give birth to the defendant believing that if he goes to trial, he would receive the statutory maximum, when in fact, he would have received the guideline sentence. The court would have to find aggravating factors that would have lead the court in a departure from the guidelines. It is revealing the true nature of the erroneous advice that leads one to have mistaken information that he relies on to make a decision that is factually untrue.

It is important to point out, the court adheres to the standard that defense counsel "need not be perfect." HERRING, supra, 491 F2d at 128. Good faith errors of counsel will not usually be sufficient to justify disturbing the conviction of sentence. However, where, as here, counsel has induced his client to plead guilty based on patently erroneous advise and misrepresentations, the court must find that the plea itself was involuntary and unknowing. In light of the fact counsel failed to advocate opposition from the departure from the "enhancement," further indicates counsel's callous attitude and inaction, in his representation of the petitioner. Fighting these charges and issues, the "enhancement" for the petitioner, was the defendant's objective and in fact the petitioner told counsel he would in fact go to trial to do so; yet, but for counsel insinuated and misrepresentions that he would in fact receive the statutory maximum, he chose a plea. The Government fails to address these issues because it got the only thing it cared about, which is the conviction. However, the government's position leaves out the very

5

possibility that counsel did in fact effectuate this situation, and the defendant submits to the court that, if the court leaves this stone unturned, the court leaves the petitioner without his fair day in court, due process and effective assistance of counsel?

In UNITED STATES V FERRARA, 954 F2d 103, 107 (2nd Cir. 1992) the Circuit Court ruled one of the reasons for giving the Rule 11(e)(2) warning is to disabuse a defendant of whatever mistaken notions the defendant's lawyer has conveyed to the defendant in a plea bargaining situation. Yet, here the court has not delved further in it's objective of clearing any ambiguity, or targeting the underlying objective. In UNITED STATES V GONZALEZ, 820 F2d 575, 579 (2nd Cir. 1987) states that, "giving the Rule 11(e)(2) warning, moreover, ensures that a defendant has had a specific opportunity to withdraw a guilty plea when the defendant is informed that the agreement with the government is not binding upon the court." This message is not clear and because it is unclear, the petitioner swears to this court that in fact, he would have withdrawn the plea and gone to trial if he known in fact that his understanding of the plea would not have prevailed, given the advice of counsel of the plea standing in light of counsel's wrong advise and information.

Theoretically, the Court, US Attorney and Defense counsel, because of, course of conduct, and in all cases, of what's to come, relevant conduct, are aware of the defendant having an opportunity to withdraw the plea when the court admonishes; however, the objective is for the defendant to know it, not the court or the others. This is what the court admonishes:

THE COURT: And as to the plea that you have signed, within the plea agreement is that the government has recommended charges, 2-3 points acceptance of responsiblity, a specific sentence of " ## ", etc.). Do you understand that the recommendation by the Government is not binding on the court and the court

6

may or may not accept it?

Apparently the court believes that the defendant understands that he can withdraw his plea at this point, this representation is not apparent to defendant and counsel has not made him aware of this opportunity. The representation by counsel too defendant's "understanding" is not that he has the opportunity to withdraw his plea, why? Because the defendant's understanding of the plea is that all possible information of the crime is then known to the Government and therefore the court, thus the reason for the plea in the first place. Defendant does not know, he is in danger of something, that is unknown to him that will change the validity of the plea, because again, counsel and US Attorney are representing that the plea will stand; leaving the information of **RELEVANT CONDUCT** and enhancements out of the equation. When in fact the government, the court, and more importantly the defense counsel, because of course of conduct, knew that relevant conduct was lurking, to in fact, change the validity of the expectations of the plea. All the parties in the court room are not first time batters in the game and all are are aware of the possibility of all the pitcher's arsenal (PSI writer's job of finding details that are relevant conduct). Defendant does no have any opportunity to find out differently unless, according to U.S. Constitutional mandate of, effective Counsel, it is represented that the defendant's psi report will reflect criminal history, and **"enhancements"** to his sentence. Truly what the Court is indicating in it's admonishments during colloquy is that because of this unknown report, the court will adopt what is found and sentence the defendant according to the PSI, regardless of the plea. This practice by the court to effectuate the plea, witch leaves the undertones of the process, lacking in the objective of the defendant receiving an informed understanding and opportunity to receive a fair adjudication of the charges.

7

Section 6B1.3 of the Sentencing Guidelines, Notes and Commentary states, in relevant part:

> "The commission encourages the prosecuting attorney prior to the entry of plea of guilty or nolo contendere under under Rule 11 of the Fed R. of Crim. Proc. to disclose to the defendant the facts and circumstances of the offense and **offender characteristics** then known to the prosecuting attorney, that are relevant to the application of the sentencing guidelines. This recommendation, however, shall not be construe to confer upon the defendant any right not otherwise recognized in law."

The petitioner asserts that beyond the wisdom of the obvious in this section, further the rules and law of contract are at play and confer upon the defendant **absolute right as conferred in law by RESTATEMENT § 205** which states, "the law implies good faith and fair dealing in every contract."

When pleaded as a defense to a contract, fraudulent inducement is related to the fundamental issue in contract actions: is there an enforceable agreement? A fraudulently induced party has not assented to an agreement without requisite information. Because the fraudulent conduct precludes the requisite mutual assent. See RESTATEMENT 2ND OF CONTRACTS § 164 Fraudulent inducement is an elementary concept in the law of contracts, and is intended to shield a party from liability in a contact action only when another party has procured the alleged contract wrongfully, or his tender. UNITED STATES V. TEXARKANA TRAWLERS, 846 F2d 297, 304 (5th Cir. 1988). The court reasoning is clear in contract juris prudence, that contract law is at it's "core," **uniform and non-diverse**, there is little risk of inconsistent state adjudication of contractual obligations. Fraudulent inducement is amoung those core concepts as it relates to the validity of mutual assent.

Wherefore the petitioner moves this honorable court for evidentiary hearing and appointment of new counsel to in fact facilitate the grounds set forth in this motion.

8

DID THE COURT PURSUANT TO THE PLEA AGREEMENT, AND AGAINST CONTRACT LAW AND
PRINCIPALS, ABUSE IT'S DISCRETION WHEN IT ACCEPTED THE CONTRACT PLEA VOID IN
CONSIDERATION? AND DOES THE COURT HAVE JURISDICTION?

In UNITED STATES V MCQUEEN, 108 F3d 64, 66 (4th Cir. 1997), which
explains the defendant's fundamental and constitutional rights hang in the
balance with respect to plea agreements. Further, UNITED STATE V RINGLING, 988
F. 2d 504, 506 (4th Cir. 1993), accordingly, in plea agreement matters, the
Government is obligated to conform it actions to a higher standard than is
expected from a typical contracting party, and we are obligated to construe any
ambiguities and and inconsistencies in a plea agreement against the Government.
The Government's greater responsibility is magnified when, as here, it has
written the agreement. UNITED STATES V HARVEY, 791 F.2d at 300. The plea
agreement process is an essential and clearly structured component of our
criminal justice system. Because the vast majority of defendants plead guilty,
some 95%, the fairness and adequacy of the procedures on acceptance of pleas of
guilty are of vital importance in according equal justice to all in federal
court.

So then, to analyze the circumstances of contract in relation to the plea
agreement contract, the petitioner would direct the courts attention to the term
contract. It has been held to include every description or agreement or
obligation, whether verbal or written, by which one party becomes bound to
another to pay a sum of money or to perform or omit to do a certain act.
RESTATEMENT 2D OF CONTRACTS (RESTATEMENT) §1 defines contract as: "a promise or
'set' of promises for the breach of which the law gives a remedy, or the
performance of which the law in some way recognizes as a duty." The petitioner
can put it in no uncertain terms, he simply did not receive any consideration
for his tender plea consideration. The petitioner would show the court that
what the government purports to give is in most cases, as here, an operation of
law, and is owed and therefore cannot be consideration for the purposes of this
transaction. Counsel failed to secure consideration and this instance, the

9

concept of counsel applying relevant principles were crucial. Counsel's failure to secure consideration for the defendant is fraudulent. Counsel and US Attorney are well aware of the objective of the plea agreement, **THE EXCHANGE OF CONSIDERATION.** This failure to afford the petitioner these fundamental contract objectives represents miscarriage of justice, or fraud upon the petitioner and the court. When evidence shows both prosecutor and defense failed to apprise defendant of true "color or nature" of charges and plea agreement terms (the process) and conditions, U.S. V ABERNATHY, 83 F3d 17, 19 (1st. Cir. 1996), the contract is void and voidable by the aggrieved party.

As mentioned in earlier arguments, counsel responsibility is to the defendant's "best results". Often criminal defendants are without understanding as to the terms being used in writings and verbal communication. Counsel's failure to make sure that defendants knew what different terms, and their use, meant in the process of his taking a plea, and ultimately what the consequences of those words meant certainly renders the defendant voluntarily ignorant. Black law defines the term **VOLUNTARY IGNORANCE**: Willful obliviousness; an unknowingly or unaware state resulting from the neglect to take reasonable steps to acquire important knowledge. This definition seems befitting of the circumstance around the defendant taking and accepting the plea agreement.

When the government offers different plea "considerations," well, let just look at the most common.

> **DROP CHARGES:** Illusion because, the government is just trading the words of the charges and not the consequences, it is the performance and not the words that are bargain for. The court will group the charges pursuant to Sentencing Guidelines 3d1.2 and therefore the consideration of "recommending" by the Government as consideration is an operation of law and the process. Unless the bite of the charges go away, (which is what the petitioner thought), then the words of dropping the charges really mean nothing. Counsel certainly knew this information.

**10**

## RECOMMENDING PARTS OF THE GUIDELINE WITHIN THE RANGE THAT THE COURT

**DETERMINES:**  This does nothing and in comparison of what the government gets, saving the cost of trial, this purported consideration seems over shadowed by what it received, given the bargaining position.

**ACCEPTING OF RESPONSIBILITY:**  This category offered by the Government is illusory as well.  According to §3E1.1(a) "If the defendant has timely notified the US Attorney Office of this intent to enter a plea of guilty and if the Defendant qualifies for a decrease under U.S.S.G. §3E1.1(a) and if the defendant's offense level determined prior to the operation of U.S.S.G. §3E1.1(a) is level 16 greater, the defendant will qualify for accepting of responsibility and an additional point under §3E1.1(b) if timely notification of intent to plead guilty is determined by one of two mechanisms:

1) When the District Court enters an Order setting a deadline for notification of intent to enter a guilty plea and the defendant provides notification by the date set forth in the Court's Order; or

2) When District Court does not enter an Order setting a deadline for notification of intent to enter a guilty plea, then the Defendant shall notify the US Attorney's Office of his intent to plead guilty not less than 3 weeks prior to the start of the trial date identified in the Trial Setting Order entered by the court.

As written, the recommendation of the government for Acceptance of Responsibility can not qualify as consideration from the Government, it is an operation of law and defendant qualifies for these benefits by his own actions and not that of competent counsel who points this out to the court.

Wherefore, the petitioner will show in the following arguments that counsel's failure to affect the plea in any way fails the very reason for advocacy by counsel.  The results of this process could have been acheived by defendant alone by open plea to the court which would have reserved all rights the petitioner was tricked into waiving.  See the arguments infra.

The court's consideration of this argument should fall on the illusion found in the lack of information being provided by counsel to the defendant.  The Sentencing Guidelines instructs the court to Group Closely Related Counts.  This insures, and the writer quotes, "All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule".

11

A valid contract must possess the element of consideration or mutuality of obligation, and mutuality means both sides must provide consideration. HEUSER V KEPHART, 215 F3d 1186 (10th Cir. 2000). Let it not be lost on the court, counsel has alluded to petitioner receiving the statutory maximum and not the advisory guidelines. This alone renders counsel's advise coercive and involuntary. RESTATEMENT § 71 Utilizing a legal definition of contracts, "no contract exist without "sufficient" consideration. CODDINGTON V ADELPHI UNIVERSITY, 45 F. Supp 2d 211, 135 Ed Law Rep. 110 (E.D.N.Y. 1999). Consideration is what distinguishes a contract from a gift. Consideration is in a contract the **quid pro quo** that which the party to whom a promise is made does or agrees to do in return for the promise. METLIFE CAPITAL CORP. V WESTCHESTER FIRE INS. CO., 224 F. Supp 2d 374 (D.P.R. 2002). A contract may be rescinded for fraud, ROSEN V CHRYSLER CORP. 205 F.3d 918, 2000 Fed App. 0086P (6th Cir. 2000), or misrepresentation CASTLEGLEN, INC. V RESOLUTION TRUST CORP., 984 F.2d 1571 (10th Cirl. 1993), even thought it has been executed CORBETT V MCGREGOR, 84 S.W. 278 (Tex. Civ. App. 1904). Petitioner's ignorance of facts warranting a rescission of a contract does not affect the right to assert such facts as a justification for rescission. COLLEGE POINT BOAT CORPORATION V UNITED STATES, 267 U.S. 12, 45 S. Ct. 199, 69 L.Ed. 490 (1925). One may justify an asserted rescission by proving that at the time, there was an adequate cause, although it did not become known to him until later. The general rule is that courts will not enforce illegal agreements, SPRINETTI V SERVICE CORP. INTERN., 324 F.3d 212 (3rd Cir. 2003), or any rights springing from illegal agreements. Where a contract violates statue, rule of law (elements of contract), or public policy, a courts' preference for enforcing bargains may give way. Indeed, whenever the court becomes aware that a contract is illegal or void, it has a duty to refrain from entertaining an action to enforce the contract.

12.

IS THERE MUTUAL ACCENT TO TERMS BY DEFENDANT AND THE UNITED STATES OF AMERICA?

Ordinarily, one who signs an agreement without full knowledge of its terms might be held to assume the risk that he has entered a one-sided bargain. But when a party of little bargaining power, and hence little real choice, signs a unreasonable contract with little or no knowledge of its terms, it is hardly likely that his accent, or even an objective manifestation of his accent was ever given to all the terms especially given the 15 minute time period. In such a case the usual rule that the terms of the agreement are not to be questioned should be abandoned and the court should consider whether the terms of the contract are so unfair that enforcement should be withheld. TOWNSEND V DANIEL, MANN, JOHNSON & MENDENHALL, 196 F3d 556 (DC Cir. 1999).

Inquiry into the relative bargaining power of the two parties is not an inquiry wholly divorced from the general question of unconscionability, since a one-sided bargain is itself evidence of the inequality of the bargaining parties. This fact was vaguely recognized in the common law doctrine of intrinsic fraud, that is, fraud which can be presumed from the grossly unfair nature of the terms of the contract. Fraud may be apparent from the intrinsic nature and subject of the bargain itself; such as no man in his senses and **not under the illusion would make**. A contract may be rescinded for fraud, ROSEN V. CHRYSLER CORP. 205 F.3d 918, 2000 App. 0086P (6th Cir 2000), or mis-representation, CASTELEGLEN, INC. V RESOLUTION TRUST CORP., 984 F.2d 1571 (10th Cir. 1993) even though said contract or provisions have been executed. CORBETT V. MCGREGOR, 84 S.S. 278 (Tex. Civ. App. 1904). To rescind a contract based on fraud, it is not necessary that actual fraud exist; it is sufficient if constructive fraud exists. ROACH V. CONCORD BOAT CORP., 317 Ark. 474, 880 S.W.2d 305 (1994), hence, a contract may be rescinded despite lack of evidence

13

of outright, intentional fraud. <u>CARDIA THORACIC AND VASCULAR SURGERY, P.O.</u> <u>PROFIT SHARING TRUST V. BOND</u>, 310 Ark. 798, 840 S.W.2d 188 (1992). <u>RESTATEMENT</u> §205 "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Courts are less and less disposed to interfere with parties making such contracts they choose, so long as they interfere with no one's welfare but their own. It is understood the court is speaking of parties standing in **an equal position** where neither has any oppressive advantage of power. The public at large has a vested interest in this criminal process because it is by the people and to the people that the Government attorney owes fairness too regarding it's duties.

The government offers a contract in illusion and defense counsel is complicit in the governments objectives. The Government purports to drop charges and then brings them back as relevant conduct that subjects the petitioner to the same liability. In this instance, there is no incentive to plea in any fashion, the alternative of a trial is warranted and would have been the option had counsel for the defendant expose this information.

The contract as written lacks the mutual assent necessary and prerequisite regarding contracts. There most be mutual assent or meeting of the minds, <u>BOURQUE V. F.D.I.C.</u>, 42 F.3d 704 (1st Cir. 1994), <u>NATIONAL</u> <u>ENVIRORNMENTAL SERVICE CO. V. RONAN ENGINEERING CO.</u>, 256 F.3d 995, 45 UCC Rep. Serv. 2d 430 (10th Cir. 2001), on all the essential elements or terms, <u>TOWNSEND V.</u> <u>DANIEL, MANN, JOHNSON & MENDENHALL,</u> 96 F.3d 1140 (10th Cir. 1999), to form a binding agreement. According to <u>RESTATEMENT OF CONTRACTS (2ND) § 17</u> a valid contract requires a manifestation of mutual assent to a <u>bargained-for-exchange.</u> At the present and the formation of the contract, the petitioner did not receive consideration in this agreement and what was purported as consideration can not in law be consideration if it is owed to the petitioner by operation of law. <u>RESTATEMENT OF CONTRACTS § 77 COMMENT (a)</u> "Offering something that is one's duty is not consideration.

**14**

If a valid contract is formed, rescission is allowed under law where there has been a misrepresentation of material fact, the misrepresentation was made to be relied on, and has in fact been relied on, if a material misrepresentation is made or material information withheld, rescission may follow regardless of whether the culpable party acted fruadulently, negligently or innocently. CHAVEZ V NEW MEXICO, 397 F3d 826 (10th Cir. 2005). **RELEVANT CONDUCT.** This term was used sparingly and the petitioner certifies that he had no concept of its meaning until after the sentencing when he found out the charges were dropped but that that was truly an illusion because the true weight of the charge themselves is the relevant conduct that subject him to the time (which is what he's trying to avoid). Under Contract law, the terms used are whats relevant to the meaning of the contract and it's consequences, and thus are important. There must be mutual assent or a meeting of the minds, BOURQUE V F.D.I.C., 42 F3d 704 (1st Cir. 1994), NATIONAL ENVIRONMENTAL SERVICE CO. V RONAN ENGINEERING CO., 256 F3d 995, 45 UCC Rep. Serv. 2d 430 (10th Cir. 2001) on all the **essential elements or terms**, TOWNSEND V DANIEL, MANN, JOHNSON & MENDENHALL, 196 F3d 1140 (10th Cir. 1999), to form a binding contract.

The petitioner would assert to this court that until this time, some fifteen minutes before he had to plea, that he never herd the word "relevant conduct" moreover, did not understand its application in law. Counsel never explain what it meant to the defendant. The Sentencing Commission, in its commentary in the Sentencing Guidelines has recognized the importance of telling the defendant what "relevant conduct" is by defense counsel and the prosecuting attorney, locate at the last paragraph under **6b1.3** Sentencing Guidelines:

> "The Commission encourages the prosecuting attorney prior to the entry of a plea of guilty or nolo contendere under Rule 11 of the Federal Rules of Criminal Procedure to disclose to the defendant the facts and circumstances of the offense and offender characteristics then known to the prosecuting attorney, that are **RELEVANT** (emphasis by the writer) to the application of the sentencing guidelines. . . . ."

15

When the Government offers that it will drop the charges in return for a guilty plea, that offered consideration must mean something and not an illusion of consideration. Words of promise must constitute a promise. In such cases there might theoretically be a bargain to pay for the utterance of the words, but in practice it is performance that is bargained for. Where the apparent assurance of performance is illusory, it is not consideration for a return promise.  RESTATEMENT OF CONTRACTS (2ND) § 77 COMMENT (a).  The Government offering to drop charges amounts to just the shell of the consequences.  The consequences are the relevant conduct and because of this important factor and language, the petitioner must understand the terms used in order that mutual assent to the essential element are present, this failure fails the existence of a valid contract.  The parties must have a distinct intention common to both and without doubt or difference; until all understanding alike, there can't be assent, and therefore no contract.  HOMESTEAD GOLF CLUB, INC. V PRIDE STABLES, 224 f3d 1195 (10th Cir. 2000).  The court is well aware that if a valid contract is formed, rescission is allowed under law where there has been a misrepresentation of material fact, the misrepresentation was made to relied on, as the case at bar, and has in fact been relied on; if a material misrepresentation is made or material information withheld, rescission may follow regardless of whether the culpable party acted fraudulently, negligently or innocently.  CHAVEZ V NEW MEXICO, supra.

DOES DUE PROCESS SURVIVE ADHESION PLEA AGREEMENT WITH UNCONSCIONABLE TERMS?

It has been found by several courts that unconscionable contracts shall not be enforced by several courts in regards to contract law as far back as 1870. In SCOTT V. UNITED STATES, 79 U.S. (12 Wall.) 443,445, 20 L.Ed. 438 the Supreme Court Stated:

> "If a contract be unreasonable and unconscionable, but not void for fraud, a court of law will give to the party who sues for its breach damages, not according to its letter, but only such as he is equitably entitled to." "....Since we have never adopted or rejected such a rule, the questions here presented is actually one of first impression."

Further it has been held in most jurisdictions that as a matter of common law that unconscionable contracts are not enforceable. See CAMPBELL SOUP CO. V. WENTZ, 3 Cir., 172 F.2d 80 (1948), INDIANAPOLIS MORRIS PLAN CORPORATION V. SPARKS, 132 Ind. App. 145, 172 N.E. 2d 899 (1961); HENNINGSEN V. BLOOMFIELD MOTTORS, INC., 32 N.J. 358, 161 A.2d 69, 84-96, 75 A.L.R.2d 1 (1960). Cf. 1 Corbin, Contracts § 128 (1963). RESTATEMENT (2ND) OF CONTRACTS §208.

Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction. In many cases the meaningfulness of the choice is negated by a **gross inequality of bargaining power,** with the back ground of the United State Constitutional guarantees of Due Process, **Effective Assistance of Counsel,** etc., and other safe guards, the plea at bar, is rendered totally coercive in nature and does not the element of true consideration as mandated under contract law. The court's sanction of the plea by the court was one of abuse in discretion in the acceptance of the

**17**

contract plea without first inquiring as to the total circumstances under which the defendant first chaffers this contract without consideration.

What the court must also consider is the voluntariness and knowing aspect of the contract and the manner in which the contract was entered, which is also relevant to the courts scrutiny. Did each party to the contract, considering his obvious education, or lack therein, have a reasonable opportunity to understand the terms of the contract, or were the important "terms" of the contract negotiated or, was the method of exposure to the contract under conditions conducive to the defendant truly understanding the terms as written? What were the benefit and detriment? And did the defendant have ample time, some 15 minutes to read the contract before defendant was to sign it and swear to its validity with a knowing and voluntary understanding?

The Government spent days preparing and creating the contract and getting it edited and approved by superiors; not to mention the benefit of years of law school, daily practice in criminal law, contract law, contract principle, and the application of these bodies of law. Yet the criminal defendant had just fifteen (15) minutes to read and swear to its validity and understanding before having to plead guilty. This practice is inherently unfair and unconscionable given the waiver terms, and the liability of this plea agreement, the court's scrutiny is warranted.

Furthermore, Defense Counsel's collaboration with the government in this process can be deemed no less culpable regarding **good faith and fair dealing.** Counsel's ignorance regarding the case law issues and aiding the petitioner in seeking a better contractual position is lacking. The Government has an advantage in the creation of plea agreement and counsel's failure to affect the four corners does operate to give the Government further advantage, as counsel insinuates that the petitioner would be subject to the statutory maximum. Any benefit that should have resulted in the execution of this agreement with advocacy of competent counsel is void.

## THE DOCTRINE OF UNCONSCIONABILITY

Plea agreements are valid, irrevocable, and enforceable as have been found by the court system. But, when grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce such agreements. id; DOCTOR'S ASSOCS., INC. V CASROTTO, 517 U.S. 681, 683, 116 S.Ct. 1652, 134 LEd 2d 902 (1996), FURGUSON V COUNTRYWIDE CREDIT INDUS., INC. 298 F.3D 778, 782 (9TH CIR. 2002).

It is a settle principle of law that "plea agreements" are a matter of contract law. SANTOBELLO V NEW YORK, PEAVY V UNITED STATES, UNITED STATES V SCHILLING, UNITED STATES V BARRON AND UNITED STATES V SANDOVAL-LOPEZ, supra. Federal law "directs courts to place arbitration agreements on equal footing with other contracts and therefore, the plea agreements, accordingly, are subject to all defenses to enforcement that apply to contracts generally. To evaluate the validity of a plea agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts. Because unconscionability is a generally applicable defense to contracts, state courts may refuse to enforce an unconscionable plea agreement. See FERGUSON, 298 AT 782. Unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contracts terms which are unreasonably favorable to the other. U.C.C. § 2-302 and RESTATEMENT 2ND OF CONTRACTS § 208 (1981). Thus, a plea contract is unenforceable under the doctrine of unconscionability when there is "both a procedural and substantive element of unconscionability." Most courts have found that procedural and substantive unconscionability "need not be present in the same degree." The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. (quoting 15 Williston on Contracts § 1763, at 226-27 (3rd ed. 1972)) (other citations omitted).

## PROCEDURAL UNCONSCIONABILITY

To determine whether the plea agreement is procedurally unconscionable the court must examine "the manner in which the contract was negotiated and the circumstance of the parties at that time." As will follow, an inquiry into whether the Government's plea agreements involves oppression or surprise is central to that analysis. A contract is oppressive if an inequality of bargaining power between the parties precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms. The court must know that the petitioner was not given chance nor oppertunity to negotiate the terms of this plea, although it may seem he got a good deal because, relevant conduct, of how the Federal system administers law. However, defense counsel's failure to procure specific alleged evidence by the government through discovery, along with the terms in this plea reeks of absolute unconscionability.

## SUBSTANTIVE UNCONSCIONABILITY

Substantive unconscionability centers on the "terms of the agreement and whether those terms are so one-sided as to shock the conscience." The court must analyze the contract as of the time is was made. The terms as presented in the pleading renders this plea by the Government unilaterally configured to the sole benefit of the Government. The court upon reassessment of the plea agreement finds unjustified one-sidedness deprives the plea agreement of the "modicum of bilaterality" that courts requires for contracts to be enforceable under state contract law.

In our federal criminal justice system, the Sentencing Guidelines are a hammer. With this tool, an unchecked executive branch has attained a level of coercion in plea agreements inconsistent with and deleterious to the letter and spirit of the Sentencing Reform Act ("SRA"). In an attempt to achieve uniformity in sentencing, the Commission "analyzed in detail 10,500 actual cases: and ascertained the average prison terms imposed and served for various offenses, criminal histories and offender characteristics. See William W. Wilkins, Jr., Plea Negotiations, Acceptance of Responsibility, Role of the Offender, and Departure: Policy Decisions in the Promulgation of the Federal Sentencing Guidelines, 23 Wake Forest L. Rev. 181, 184 (1998). After balancing this **"common law reality"** of sentencing against the SRA's articulated theories of punishment and adjusting that reality to conform to certain mandatory minimum sentences, the Commission promulgated the "Guidelines."

**The architects of the "guidelines" realized that, without meaningful appellate review, the new sentencing scheme was form without substance.** See S. Rep. No 98-225, at 151 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3334 (noting that "[a]ppellate review of sentences is essential to assure that the guidelines are applied properly"). As Acting Assistant Attorney General Keeney later wrote, the lack of appellate scrutiny "could encourage a lawless district court to impose sentences in violation of the guidelines." UNITED STATES V. RAYNOR, 989 F. Supp. 43, 45 (D.D.C. 1997) (quoting United States Department of Justice Memorandum for All United States Attorneys from John C. Keeney, Acting Assistance Attorney General. at 3 (Oct. 4, 1995)); see also UNITED STATES V. ROSA, 123 F.3d 94, 100 (2d Cir. 1997) (noting similar concern). The architects of the "guidelines" also understood that appellate rights were "essential . . . to provid case law development," which would instruct the Commission "of the appropriate reasons for sentencing outside the guidelines." **Remember,** the so-called "Guidelines" were envisioned as an evolving system subject to amendment.

21

In much of the last decade, however, the Department of Justice has implemented a policy requiring all criminal defendants to waive the right to appellate review of sentences as a precondition to discussing cooperation. See, e.g., UNITED STATES V. RAYNOR, 989 F. Supp. 43, 44-45 (DDC 1997) (Discussing and quoting Assistant Attorney General Keeney's 1995 Memorandum that was origin of the Department of Justice's 1997 directive to include appellate waiver language in all federal plea agreements); Lynn Fant & Ronit Walker, Reflections on a Hobson's Choice: Appellate Waivers and Sentencing Guidelines, 11 Fed. Sent. Rep. 60, 60 (1998) (Noting that in UNITED STATES V. BUCHANAN, 131 F.3d :1005 )(1.1th -Cir. 1997), the government insisted that the defendant "waive his right to appeal before it would consider making a substantial assistance motion purusant to § 5k1.1 or Fed. R. Crim. P. 35(b) or just to enter plea bargains at all, or to even plea guilty as implied by the Government with the defense counsel sanctioning the plea.

In the abstact, as appellate judge Alex Kozinski has asserted, because the waiver spares the government the cost of appeal, it serves as one of few bargaining chips criminal defendants have to "buy" a penalty reduction in the fee market of sentencing. See UNITED STATES V. GONZALEZ, 981 F.3d 1037, 1043 (9th Cir. 1992) (Kozinski, J., dissenting). This position has intuitive appeal because, in the SRA's wake, the criminal workload of federal appellate courts, and by implication, the government's appellate costs, has doubled. See Roger W. Haines, Jr., Waiver of the Right to Appeal Under the Federal Sentencimg Giudelines, 3 Fed. Sent. Rep. 227, 227 (1990). In reality, however, there is no such thing as a sentencing "free market"-- a cartel controls the price. See UNITED STATES V. READY, 82 F.3d 551, 559 (2d Cir. 1996) (Describing government's "awesome advantages in bargaining power"); UNITES STATES V. DELA FUENTE, 8 F.3d 1333, 1338 (9th Cir. 1993) (referring to government's bargaining advantage); see also UNITED STATES V. RAYNOR, 989 F. Supp. 43 49 (DDC 1997) (characterizing plea agreement with appellate waivers as **impermissible**

22

**contracts of adhesion**). Thomas Hillier, **, Commentary by Federal Defenders to Proposed amendment to Fed. R. Crim. P. 11(c), 11 Fed. Sent. Rep. 43, 50-51 (1998) (discussing government's superior bargaining position in plea agreements subject to "guidelines"). In all cases, unless a defendant can "cooperate" and win a departure under section 5k1.1, he or she will suffer the full draconian effect of the Guidelines, as a result that is apprehensible to equal justice. In such a market, the appellate waiver is not "a bargaining chip in a poker game, but the ante required even to sit at the table. See David E. Carney, Waiver of the Right to Appeal Sentencing in Plea Agreements with Federal Government, 40 Wm. & Mary .Rev. 1019, 1033 (1999).

The brutal coercions of the appellate waiver, however is but one concern. As Judge Robert M. Parker has forcefully argued, the practice "manipulates the concept [that the waiver is] knowing, intelligent, and voluntary," implicating due process and judicial function concerns. UNITED STATES V MELANCON, 972 F.2d 566, 571 (5th Cir. 1992) (Parker, J., Concurring); see also UNITED STATES V. JOHNSON, 992 f. Supp. 437, 438-39 (DDC 1997) (where Judge Green "could not conclude in logic or justice that the defendant's waiver of the right to appeal an illegal or improper sentence is 'knowing' inasmuch as the sentence is not and cannot be known at the time of the plea"); UNITED STATES V. RAYNOR, supra at 43, 44 (questioning the 'knowing' element of appellate waivers because only a "clairvoyant defendant" could anticipate potential sentencing errors at the time the waiver is executed).

With its current policy, the government secures the appellate waiver before the defendant has access to the factual assertions in the presentence report and the trial court's "relevant conduct" determinations. How can a defendant knowingly waive the right to appeal a sentence that is yet to be determined or imposed? Isn't "such a waiver inherently uninformed and unintelligent"? MELANCON, 972 F. 2d at 571 Not to mentioned defense counsel

23

responsibility in securing the rights of the defendant and positioning the
defendant for the best plea "contract". With this in mind, how can a trial
court judge conducting the Rule 11 colloquy conclude an understanding of the
charges alleged and possible consequences arising there-from? See Fed. R. Crim.
P. 11(b)(1)-(3). The Government's "negotiating" position, which demands a
waiver of sentencing appellate rights, necessarily requires a defendant to
waive appellate rights without the requisite information to know the
consequences of waiver. Thus, the plea agreements in the United States
expressly provided that the appellate waiver was totally to the benefit of the
United States and totally to the detriment of the defendant because the United
States preserved all its right to appeal. See <u>UNITE STATES V. SARRATT</u>, No.
3:01CRO8-MU, at 4 (W.D.N.C. June 22 2001) (Plea Agreement).

    In a August 7th 2003 order, after respectfully consideration, the
Honorable Graham C. Mullen order, and denied the Governnments's motion
concerning his "blanket order" concerning appeal waivers as part and parcel of
His solemn constitutional duty to preside over all federal criminal cases,
Article III judges must in accepting or rejecting plea agreements use a
discretion informed by <u>equity and justice</u>. <u>UNITED STATES V JACKSON</u>, 563 F.2d
1145, 1148 (4th Cir. 1997) (expressing the opinion that "each individual judge
is free to decide whether, and to what degree, he will entertain plea bargains,
and his refusal to consider any plea bargaining whatsoever will not vitiate a
guilty plea which has otherwise been knowingly and voluntarily entered").
Judge Mullen goes on to say that because he believed the appellate waivers were
contracts of adhesion incongruous with in contravention of the Congress's
intent to achieve uniformity and consistency in sentencing, He described the
mandatory waivers as **unconscionable**. Judge Mullen stated that even assuming
the legal error of his decision to enter a "blanket order" he made clear that
He was willing to reject every plea agreement with the appellate waiver on an
individual basis pursuant to Rule 11. 24

FRAUD ON THE COURT

Relying on <u>HAZEL ATLAS GLASS CO. V HARTFORD-EMPIRE CO.</u>, 322 US 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) the petitioner will show the court that the "savings clause" of Rule 60(b) gives this court jurisdiction on this subject matter.

The petitioner will show that the court officers, namely the Government did, and continues to perpetrate a fraud on this court by filing plea contracts and prosecuting those charges by using the court to adjudicate these pleas    with collusion between the Government and Defense counsel. The petitioner will show that the the parties continues to perpetrate this fraud on the court with the knowledge that petitioner was and is entitled to a contract not void in law for want of consideration and or lacking mutual assent to terms and performance.  Certainly due process affords this basic right in the plea process as well.

The United State Governmern Attorney, presumably the government and the attorney for the defendant are aware of contract law, the elements of contracts in order that they might be found colorable in law.

If not all, then majority of the states' contracts are found upon the following elements:

**Mutual  Assent,**

**Capacity,**

**Legality,**

**Consideration, and**

**Offer and Acceptence**

That failure render a contract void, or voidable.  When the Government and Counsel for the defendant conspires to persuade the defendant to enter a plea agreement void in the aforementioned respects of contracts, such is a

25

collusion that does damage to public policy as to public expectation. Arguments presented in other sections are reintegrated for the purposes of this argument, without repeating the same herein.

The Government secured the conviction through collusion with defense counsel by failing to make the defendant aware of terms being used, the application of what's said to the process, and most importantly the consequences to the defendant (at this point of the plea, petitioner has never herd the term relevant conduct nor does he know enough about the process to ask what it means because he has not identified it as a "threat" to even ask question; given the pressure of the process, and the awe of the court itself). It is elementary that a defense counsel would advise the defendant about relevent conduct before this stage in the face of the government offering to drop charges. His failure to do this was materially false, misleading and fails to represent the process accurately. Under the Fed. R. Civ. Proc. Rule 11 knowing element and the savings clause of the Rule 60 petitioner may bring an independent action to set aside a judgment for "fraud upon the court." GLEASON V. JANDRUCKO, 860 F3d 556, 558 (2nd Cir. 1988) Unlike motions brought under Rule 60(b)(1-6), which are subject to time lines requirements, the clause provides that Rule 60 "does not limit the power of a court . . . to set aside a judgement for fraud upon the court." See also HADGES V YONKERERS RACING CORP., 48 F3d 1320, 1325 (2nd Cir. 1995)

Although the savings clause is not subject to the strict time lines requirements of Rule 60(b)(3), which also addresses fraudulently obtained judgements, relief under the savings clause is "narrower in scope than that which is sufficient for relief by timely motion [under 60(b)(3)] GLEASON, 860 F2d at 558 (citation omitted). While Rule 60(b)(3) deals with injury to a single litigant, fraud under the savings clause is limited to "fraud that seriously affects the integrity of the normal process of adjudication." Id. at 559 (citation omitted); see also HAZEL-ATLAS, 322 US at 246, 64 S.Ct. 997.

In order to bring such an independent action, a petitioner initially must show that he had no other available or adequate remedy and that his own "fault, neglect, or carelessness did not create the situation for which petitioner seeks equitable relief. CAMPANIELLO IMPORTS, LTD. V SAPORITI ITALIA SPA., 117 F3d 655, 662 (2nd Cir. 1997). The petitioner was not the cause of this problem as asserted in these arguments and because of his ignorance, counsels job was specific to the process: Explain the relevant information to the defendant as **it becomes** necessary. If this was a civil suit regarding some other matter, counsel lack of due diligence in providing pertinent information relevant to the consequences would amount to civil liability.

The petitioner must show that an officer of the court, "whose judgment is under attack' acted in a manner that is intentionally false, willfully blind to the truth, or is an reckless disregard for the truth." ALLEY V BELL, 392 F3d 822, 831 (6th Cir. 2004) and certainly counsel's behavior fits the ambit of culpability.

To date, there has been no fact development of the plea agreement including but not limited to the plea and negotiations. The Government is well aware of this fact, the defense counsel is well aware of this fact yet none of these people have alerted the court of these facts, to no avail. An attorney's loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court, and, when he departs from that standard, he perpetrates a "fraud upon the court" within savings clause of rule governing relief from judgement or order. KUPFERMAN V CONSOLIDATED RESEARCH & MFG. CORP., 954 F2d 1072 (1992). In UNITED STATES V KOJAYAN, 8 F3d 1315 (9th Cir. 1993) "A lawyer representing the Government in a criminal case serves truth and justice first", thus this concept seems foreign to the parties to this case.

27

If a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms, <u>relevant</u> conduct, of proposed contract, his conduct is not effective as a manifestation of assent. <u>RESTATEMENT</u> § 163. The omission of the term by the party's to induce the plea, seems void in essence of objective in regards to knowing, voluntary and mutual assent. Key elements of the process of plea and plea agreements. A misrepresentation induces induces a party's manifestation of assent if it substantially contributes to his decision to manifest his assent. Certainly this is the case given the fact that he would have elected difference position regarding the fact of relevant conduct. <u>RESTATEMENT</u> § 167.

"Fraud in factum" exists where an alleged misrepresentation relates to the character of the document being signed, <u>RESOLUTION TRUST CORP. V KENNELLY</u>, 57 F3d 819 (9th Cir. 1995) and the misrepresentiation must go to the essential character of documents signed, not merely its terms, <u>VASAPOLLI V ROSTOFF</u>, 39 F3d 27 (1st. Cir. 1994) such as where one party believes that he is giving consent to obligation under defined rights, entitlement, detriment and expectation. However, his intentions are misrepresented by Defense counsel when he could have known truth by merely having time to read the document (having only fifteen minutes to understand the document before having to swear to it's knowledge and vilidity) when he signed the document. Effective and informed counsel would have given more time and demanded as much as it does the PSI report mandate of 30 day notice of content prior to sentencing. Surely the court must find that the acceptance of the contract plea deserves the same process. Defendant cannot defend against its enforcement on sole ground that he signed it without reading it, the mere existence of an opportunity to know the contents of the proposed contract is

28

not sufficient by itself to infer constructive notice, where the party has justifiably relied to his detriment upon the other party's misrepresentation about the nature of the proposed contract, the Government through Defense counsel.  Fraud in the factum or execution, that is the sort of fraud that procures a parties signature to an instrument without the knowledge of its true nature or contents, renders a contract void, while fraud in the inducement renders a contract merely voidable. <u>BURDEN V CHECK INTO CASH OF KENTUCKY, LLC.</u>, 267 F3d 483, 2001 FED App. 0349p (6th Cir. 2001), cert. denied, 535 U.S. 970, 122 S.Ct. 1436, 152 L.Ed 2n 380 (2002).

DOES THE OPERATION OF THE "PLEA PROCESS," RENDER THE COURT'S DISCRETION IN ACCEPTING THE PLEA AGREEMENT, VIOLATE PUBLIC POLICY, CONTRACT PRINCIPLES AND LAWS?  THE PETITIONER MOVES TO RESCIND THE PLEA AGREEMENT AS VOID IN LAW AND THEREFORE THE COURT HAD NO JURISDICTION.

The petitioner directs the court attention to the absolutes of contract law and obligation. The **ratio decidendi** was that the Government's contractual obligations under the agreement, however the petitioner will show that the operation of the plea process serves, without real notice, to the petitioner frustration of purpose, and denies any reason to have enter the contract in the first instance. This doctrine says, "Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language of the circumstances indicate the contrary. RESTATEMENT § 265 (1981).

The United States Constitution states in Article 1 § 10, in relevant part, "NO state shall pass . . . law impairing the obligation of contracts . . ."

> The obligation of contract is 'the law which binds the parties to perform their agreement.'" HOME BUILDING & LOAN ASSN. V BLAISDELL, 290 US 398, 429, 78 L.Ed 413, 54 S.Ct. 231 (1934)(quoting STURGES V CROWNINSHIELD, 4 Wheat 122, 197, 4 L.Ed 529 (1819)). A contract depends on a regime of common and statutory law for its effectiveness and enforcement.

> "Laws which subsist at the time and place of making a contract, and where it is to be performed, entered into or form a part of it, as fully as if they had been expressly referred to or incorporated in its terms. This principle embraces alike those laws which affect its construction and those which effect its enforcement or discharge." FARMERS AND MERCHANTS BANK OF MONROE V FEDERAL RESERVE BANK OF RICHMOND, 262 US 649, 660, 67 L.Ed 1157, 43 S.Ct. 651, 30 ALR 635 (1923).

Courts are without jurisdiction to recognize, to entertain, and therefore enforce contracts that violate public policy and are facially void. The question then becomes, what is public policy? Public Policy is at any particular time means the laws of the states, whether found in the United States Constitution    or

Constitution of respective state   Constitutions, the statues, and/or the judicial decisions and some times rules that govern them.   F.A. STRAUS & CO. V CANADIAN PAC. R. CO., 254 N.Y. 407, 173 N.E. 564 (1930).

The court, sue sponte, must find beyond the perspective parties interest, a contract found on fundamental elements of contract, it's discretion must be bound and informed by equity and justice first, and without regard of persons or subject matter. That failure, renders law useless.   Contracts are 92% of what the people of the United States are involved in on a daily basis, and the court deals with criminal pleas (contracts) 95% of the time in the disposition of adjudication.   The concepts of contract are implied by operation of behavior oral and written. In most cases they are written, and because of this, elements of contract:

Offer & Acceptance

Mutual Assent

Legality

Capacity, and

Consideration

must be present within all contracts.   If they are not, then as a matter of law, there is no contract and therefore no obligation, thus no jurisdiction.

Accordingly, the court must find, sue sponte, as per public policy, all elements of contract. If the court can not find these five elements the court does not adjudicate the writing because it lacks legal definition that rises to the ambit of a contract, found in law. It is a matter of public policy, based on   countless decisions, regarding the operation of valid contracts, the court must sue sponte find in agreements or contracts all elements of contract. If the court finds contract validity (i.e. every element) in the plea then jurisdiction is found, this failure renders the plea  facially void.   Black's   Law defines Facially Void:   (Of an

31

instrument) patently void upon an inspection of the contents.--Also termed void on its face. Without requisite element that completes a document. A contract has no legal force apart from the law that acknowledges its binding character.

As a result, the operation of the Courts' ability, seems to be exempt from "all other contract law protocol." This effectuates, be it inadvertent, an override of contractual obligation, necessary to carry out an approved legal writing found in the four corners of the writing. By constructive subversion and application, the law that makes the contract binding is render void if allowed. The allowance of this process to erode the concept of Due Process and the very nature of the obligation of contract as contemplated by the Constitution. Therefore, inter alia, the court must give credence to asserted right, once an aggrieved party finds the absence of these elements and cries for its remedy.

The operation of a plea agreement, or contracts, are found in equity and fairness or as the law implies in every contract, Good Faith and Fair Dealing, RESTATEMENT § 205. The court must find, sue sponte, these five (5) element in every contract, that failure renders the court power void for jurisdiction. So then, if the court fails this very fundamental function, directly or constructively, therein lies a real misconception of duty to the letter of law, by the fact finder.

Intervention by third party, even by the operation of law by a court, renders the mechanical operation of law, void which leaves intrusive effect that forces departure from the true nature and intent of the contract, and, the parties' true objective, in forming the contract. Therefore it can not be found in Due Process and equally not found in the Constitution.

Approval of the plea as it stands does violate public policy because elements of contract are lacking, vague and void in substantive mutual

obligation and mutual assent as required in all contracts. First and specifically, relevant conduct, is a creature totally foreign to the criminal defendant going into criminal process. However, all other parties are very much aware of this factor that subjects the defendant to liability, that lies outside the four corners, of conditions under which he tenders his plea. Then, compound receiving the plea document, 15 minutes literally before the defendant had to sign and swear to it's meaning, logic, obligation and consequences, this against the back drop of the bargaining power of the Government, is tantamount to blatant fraud perpetrated by the Government, with defense counsel complicity, such collusion may be found as, fraud on the Court.

The Court or Judge comes in to court to accept the plea agreement that was tendered under **specific** and implied conditions; (not to mention assumptions, misrepresentations, misdirection and some time blatant lies by the attorneys as to several aspects of the plea), and approves the plea under specific conditions as written agreed, and as defendant tendered his plea. The court states, "the court's not bound regarding what the defendant might understand about the plea," yet the Government's position is never mentioned as to the court's potential consideration or mutual assent to terms or lack of therein. The defendant does not know that at this point he can withdraw his plea. His tender, based on conditions, is what defendant bargains for, only; while the Court, Government Attorney and Defense Counsel knew that Relevant Conduct will haunt the defendant when the PSI report comes back. The solution? Very simply . . . make relevant conduct apart of Rule 11, then and only then can the plea process be assessed as "knowing and voluntary," and truly have the element of" **mutual assent**," as to terms and consideration.

The court when it finds relevant conduct.(it would seem that such an important term, **relevant conduct**, in the sentencing part of the process was not used or attention was diverted from its true character during the plea negotiations and hearing) and three months after the fact of taking the plea and giving up all rights, applies relevant conduct, which operates to circumvent the contract and therefore voids the contract when the conditions under which the defendant tender plea, changes. The court's adoption of relevant conduct operates to circumvent the obligation of contract, contrary to the Constitution. If the state, as mention in the Constitution, can not abridge the obligation of contract, can the court abrogate a contracts validity? The defendant asserts that it can not.

By operation of the plea colloquy, the Court in stating it is not bound by the plea terms, intervenes on the plea at this stage and therefore the plea should be withdrawn. Yet, the defendant is told prior to going into the court room, "just answer in the affirmative, that the court will go through this colloquy as a matter of formality." "Don't worry the plea agreement is in place." The defendant understands only that the court is asking whether any promises have been made other than the plea itself, not to the potential of intervention by the court or any other source, i.e. relevant conduct. The defendant answers no, because here, the government, defense counsel and the court knows about relevant conduct exposure, yet the term is conspicuously missing from the execution of the plea. The only person who does not know is the defendant who is ignorant of the nature of proceedings, and the plea itself. The plea must be knowing and voluntary. Clearly this method of accepting the plea is wanting.

Whether the doctrine of contract frustration is applicable depends upon the particular circumstances and conditions of each case. The excuse of contract (or plea agreement), frustration is a question of law, to be

34

determined by the court from the facts of the case. The establishment of the defense requires convincing proof of a changed situation. DAYS INN OF AMERICA, INC., 88 F. Supp. 2d 928 (C.D. Ill 2000). There must also be a finding that there was an implied condition that the change circumstances would excuse performance. because the change results in a failure of consideration or the loss of the expected value of the performance and was not reasonably foreseeable. If counsel fails to advise as to the potential of the possibility of intervention by the court, counsel has truly failed his obligation to defendant as to effective assistance of counsel as contemplated in STRICKLAND V WASHINGTON, 466 US 668, 687 (1984). The doctrine does not apply where the risk of the event that has supervened to cause the alleged frustration was reasonable and could and should have been anticipated by the parties and provision made for it in the agreement. Defendant certainly had no knowledge of the possibly. WHEELABRATOR ENVIRONMENTAL SYSTEMS, INC. V GALANTE, 135 F. Supp. 2d 21 (D. Conn. 2001). In other words, to show frustration of contract, the frustration must be so severe that it is not fairly regarded as being within the risks assumed under the contract; counsel knew or should have known about the possibility of "relevant conduct intervention" by the court.

The doctrine of contract frustration should have limited application so as to preserve the certainty of contracts, COMDISCO DISASTER RECOVERY SERVICES, INC. V MONEY MANAGEMENT SYSTEMS, INC., 789 F. Supp. 48 (D Mass. 1992) because it is an exception to the rule that the parties must abided by their contract in spite of contingencies. The defendant's understanding of contract is what he seeks for contract enforcement. RIV VIL, INC. V TUCKER, 979 F. Supp. 645 (N.D. Ill. 1997) Thus, it should be applied sparingly, such as when its application would not work an extreme hardship. The doctrine excuses a promisor where performance would be "virtually worthless, UNITED

35

STATES V THOMPSON, 237 F3d 1258 (10th cir. 2001), cert. denied, 532 U.S. 987, 121 S.Ct. 1637, 149 L.Ed. 2d 497 (2001), or the objectives of the contract have become meaningless, "utterly defeated," "totally or nearly totally destroyed," or "completely thwarted" RIV VIL, INC. V TUCKER, supra, by circumstances arising after the formation of the agreement.

Furthermore, to determine whether the government's actions constituted a breach of the plea agreement, the court applies a two-step analysis, 1) Court examine the nature of the government's promise and consideration; and 2) The court evaluates this promise in light of the defendant's reasonable understanding of the promise at the time (of the execution of the agreement regarding mutual assent and consideration or mutual obligation). UNITED STATES V BRYE, 146 F3d 1207, 1210 (10Th Cir. 1998). After the court finds the circumstances of the plea and what was promised, the court looks directly at the "defendant's" understanding or what he was lead too understand and what the tangible consideration truly represent to the defendant. Consideration is **quid pro quo** that which the party to whom a promise is made does or agrees to do in return for the promise. Consideration is, in effect, the price bargained for and paid for a promise. RESTATEMENT 2ND OF CONTRACTS § 1 defines a contract as "A contract is a promise or set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty. This contract plea offered in this case does not offer consideration. The Government, Defense Counsel and the Court was well aware of the omission of "relevant conduct" to the defendant, and, was either actively or constructively aware of the implication of holding this paramount point of information from the defendant; effectively holding defendants hostage to his own ignorance.

36

Found in contract law, defense counsel's assistance should become evident at this point, yet it does not. Evidence of this phenomenon can be surveyed in 95% of filings to perspective courts, although not quite articulated effectively. The court would find a common denominator of "relevant Conduct" at the heart of these appeal's for review and proof positive of the inherent problem with the process.

When two parties enter into a contract, each has an object or purpose for which he joins the transaction. The Government's purpose in this case was to obtain a conviction against the defendant based on the charges brought. The defendant's objective is to minimize his exposure to the punishment for the crime charged. In UNITED STATES V BUNNER, 134 F3d 1000, 1003 (10th Cir. 1998), the court held, in context of a plea agreement, that where a supervening event renders one party's performance "virtually worthless to the other . . . the aggrieved party is discharged from performing under the doctrine of frustration of purpose. In order for the frustration of purpose doctrine to apply, the non-occurrence of the supervening event must have been a basic assumption of the agreement. This is the case at bar, the defendant is mislead into believing that the plea agreement with Government, with encouragement by counsel as to the plea documents nature, even in the face of what the judge says during colloquy, render the petitioners' position etched in stone. However, this is not the case because of, **RELEVANT CONDUCT**.

The court's reasoning is clear in contract juris prudence, contract law is at it's "core," **uniform and non-diverse**, there is little risk of inconsistent state of adjudication of contractual obligations. UNITED STATES V TEXARKANA TRAWLERS, 846 F2d 297, 304 (5th Cir. 1998).

Wherefore the petitioner prays that this court will appoint counsel and order evidentiary hearing a matter of law and any and all other relief this court might find just and proper.

37

## PRAYER FOR RELIEF

Wherefore the petitioner moves this honorable court to appoint counsel as a matter of law. That petitioner is pro se and because of this feels that an attorney's assistance in this matter would greatly assist the petitioner and the court regarding these matters.    Furthermore, the petitioner prays that this honorable court would set evidentiary hearing specifically to address the issues concerning this plea (contract) and other facts surrounding these issues as presented.

Therefore the petitioner moves this court for relief as a matter of equity. That the court would calendar this motion as it's earliest date so as to clarify these issues and any and all other relief this court might find just and proper. I certify that the foregone is true and correct by my signature.

This the _6_ day of _January_ 20 _11_.

_Raymond L. Norcutt Jr._

RAYMON NORCUTT, JR.   #09868-091
USP BEAUMONT
P.O. BOX 26030
BEAUMONT, TX 77720

## CERTIFICATE OF SERVICE

I certify that on the _6_ day of _January_ 20//, I served a true
and correct copy of the attached on the party below by placing the same in
the United States Mail prepaid addressed as follows:

**CLERK OF COURT**
**US COURT HOUSE**
**2120 CAPITOL AVENUE, ROOM 2131**
**CHEYENNE, WY 82001**

*Raymond L. Norcutt Jr.*
**RAYMOND NORCUTT, JR.**